MEMORANDUM OPINION
 

 PAYNE, District Judge.
 

 The plaintiff, Amanda Haines (“Haines”), filed this case after resigning from employment with Southern Retailers, Inc. (“Southern Retailers”). She seeks to obtain damages and overtime pay related to her employment as a manager at a Southern Express convenience store. Haines was employed by Southern Retailers from May, 1993 through April, 1996; except for the first month of her employment, Haines’ job title was that of “store manager.”
 
 See
 
 Plaintiff’s Memorandum In Response To Defendant’s Motion For Summary Judgment, Exhibit 2 (Haines Affidavit) at 1. Southern now moves this Court for summary judgment.
 

 Haines’ Complaint asserts four claims for relief: Count One alleges that Southern Retailers willfully failed to pay Haines the overtime compensation to which she was entitled under § 7a of the Fair Labor Standards Act of 1938, as amended (“FLSA”), 29 U.S.C. § 207(a). Count Two alleges that Southern Retailers, with malice or reckless indifference, subjected Haines to adverse terms and conditions of employment in retaliation for her claims for overtime pay under the FLSA, in violation of § 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3). Count Three alleges that Haines was wrongfully discharged, in violation of the public policy of Virginia as expressed in the Virginia Human Rights Act in retaliation for her opposition to unlawful practices. Count Four alleges that Southern Retailers, with malice or reckless indifference, wrongfully discharged Haines in retaliation for her opposition to unlawful practices, in violation of § 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).
 

 
 *443
 
 Three of these four claims have previously been disposed of by the Court. Count Three was dismissed by an Order dated June 14, 1996, granting Southern Retailers’ Motion To Dismiss pursuant to Fed.R.Civ.P. 10(b)(6), and the Court granted Southern Retailers’ motion for summary judgment as to Counts Two and Four pursuant to a Memorandum Opinion and an Order dated September 10, 1996. Southern Retailers has also moved for summary judgment as to Count One of the Complaint, pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Southern Retailers’ Motion For Summary Judgment is granted as to Count One. In the interest of brevity, the pertinent facts will be set forth as part of the analysis of the issues to which they relate.
 

 DISCUSSION
 

 In Count One, Haines alleges that Southern Retailers willfully faded to pay her the overtime compensation to which she was entitled under § 7(a) of the FLSA, 29 U.S.C. § 207(a)(1). According to Haines, during her three years of employment with Southern Retailers, she worked many overtime hours in excess of a forty hour week.
 

 Section 7(a) of the FLSA guarantees to employees compensation at a rate of not less than one and one-half times the regular rate of compensation for all hours they worked in excess of a forty-hour week. 29 U.S.C. § 207(a)(1).
 
 [1]
 
 However, under § 213(a)(1), any bona fide executive employee is exempt from the entitlement created by § 207. 29 U.S.C. § 213(a)(1).
 
 [2]
 
 The issue in this action depends upon whether Ms. Haines was an “executive employee” within the purview of the exception to the FLSA overtime compensation requirements. Haines claims that, notwithstanding her job title of “store manager,” she was not an “executive employee” and thus is entitled to unpaid overtime compensation pursuant to § 207(a)(1) of the FLSA. Southern Retailers claims that Haines was an “executive employee” under § 213 of the Act, and thus is exempt from overtime compensation requirements.
 

 A. Legal Standard for Overtime Pay Under the FLSA..
 

 Whether an employee is a bone fide executive employee is determined by the regulations promulgated by the United States Department of Labor in 29 C.F.R. § 541.1. In § 541.1, there is a “long test” for determining whether an employee qualifies for the executive exemption from FLSA for overtime compensation. The long test lists six factors
 
 all of which
 
 must apply before an employee is qualified as an “executive.” However, § 541.1(f) provides that, where an employee is paid more than $250 per week, the “short test” for determining executive status, found in 29 C.F.R. § 541.119, applies in lieu of the “long test.” It is undisputed that, throughout her employment with Southern Retailers, Haines was paid a minimum of $350 per week.
 
 See
 
 Plaintiffs Response Brief, Exh. 2 at ¶ 12 (Haines Affidavit); Defendant’s Motion For Summary Judgment at 14. Hence, as Southern Retailers asserts, and as Haines concedes, the “short test” from § 541.119 supplies the proper framework for analysis here.
 

 Under § 541.119, an employee is a bona fide executive, and is thus exempt from receiving overtime compensation under the FLSA, upon the satisfaction of three factors:
 

 (1) the employee is a “high salaried executive,” who is compensated on a salary basis at a rate of not less than $250 per
 
 *444
 
 week exclusive of board, lodging, or other facilities;
 
 and
 

 (2) the employee’s duties include the customary and regular direction of the work of two or more other employees therein;
 
 and
 

 (3) the employee’s primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof.
 

 See
 
 29 C.F.R. § 541.119.
 
 [3]
 
 As discussed above, it is undisputed that Haines meets the first factor — she was paid at least $350 per week throughout her three-year period of employment at Southern Retailers. The remaining two factors, and their applicability to Haines’ employment at Southern Retailers, will be discussed in turn in Part C of this memorandum. First, a brief review is provided of the standard which must be used to measure Southern Retailers’ Motion for Summary Judgment.
 

 B. Legal Standard for Summary Judgment.
 

 Summary judgment is to be rendered “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The rules further provide:
 

 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party’s pleading, but the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 

 Fed.R.Civ.P. 56(e).
 

 The party seeking summary judgment “bears the initial responsibility of informing the district court of the basis for its motion,” and of establishing, based on relevant portions of the record, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986);
 
 Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,
 
 828 F.2d 211, 216 (4th Cir.1987);
 
 see also Catawba Indian Tribe v. South Carolina,
 
 978 F.2d 1334, 1338-39 (4th Cir.1992). “[Wjhere the non-moving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the ‘pleadings, depositions, answers to interrogatories and admissions on file.’ ”
 
 Celotex, 477
 
 U.S. at 324, 106 S.Ct. at 2553. The moving party may also use affidavits to support its motion.
 

 • Once this initial showing under Rule 56(e) is made, the burden of production, but not persuasion, shifts to the nonmoving party. The non-moving party must go beyond the pleadings and, by citing its own affidavits or by citing “ ‘depositions, answers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.’ ”
 
 Id.
 
 Opposition to a properly documented summary judgment motion may not be based solely on the pleadings.
 
 Id.
 

 When “the moving party has carried its burden under Rule 56(e), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.”
 
 Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). The “mere existence of
 
 some
 
 alleged factual dispute
 
 between
 
 the parties will not defeat an otherwise properly supported motion for summary judgment; the require
 
 *445
 
 ment is that there be no
 
 genuine
 
 issue of
 
 material
 
 fact.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The non-moving party, however, “need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.”
 
 Anderson, 477
 
 U.S. at 257, 106 S.Ct. at 2514. It is the function of the district court not to weigh the evidence, but to determine whether there is a genuine issue for trial, and “there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.”
 
 Id.
 
 at 249, 106 S.Ct. at 2511 (citations omitted). Hence, summary judgment is appropriate if the evidence is “merely colorable” or “not significantly probative.”
 
 Id.
 
 at pp. 249-50, 106 S.Ct. at 2511 (citations omitted). The district court must also “view the evidence presented through the prism of the substantive evidentiary burden.”
 
 Id.
 
 at 254,106 S.Ct. at 2513.
 

 Furthermore, “[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.”
 
 Id.
 
 at 255, 106 S.Ct. at 2513. Summary judgment is appropriate only if, upon consideration of the record as a whole, a reasonable trier of fact could not find for the non-movant.
 
 Allstate Fin. Corp. v. Financorp, Inc.,
 
 934 F.2d 55, 58 (4th Cir.1991). But, where a faithful examination of the record establishes the absence of a genuine issue of material fact, it is “the affirmative obligation of the trial judge to prevent ‘factually unsupported claims and defenses’ from proceeding to trial.”
 
 Felty v. Graves-Humphreys Co.,
 
 818 F.2d 1126, 1128 (4th Cir.1987);
 
 see also Guinness PLC v. Ward,
 
 955 F.2d 875, 883 (4th Cir.1992). With these principles in mind, the court will consider the motions for summary judgment filed by Southern Retailers.
 

 C. Application of the Legal Standard to This Action.
 

 As set forth above, an employee is a bona fide executive under § 541.119, and is thus exempt from receiving overtime compensation under the FLSA, where a three-part test is met:
 

 (1) the employee is a “high salaried executive,” who is compensated on a salary basis at a rate of not less than $250 per week exclusive of board, lodging, or other facilities;
 
 and
 

 (2) the employee’s duties include the customary and regular direction of the work of two or more other employees therein;
 
 and
 

 (3) the employee’s primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof.
 

 See
 
 29 C.F.R. § 541.119.
 

 Because the FLSA is remedial in nature, exemptions from its coverage are to be narrowly construed against those seeking to assert them, and their application is limited to those established plainly and unmistakenly within their terms and spirit.
 
 Meyer v. Worsley Cos., Inc.,
 
 881 F.Supp. 1014, 1017 (E.D.N.C.1994). In the Fourth Circuit, an employer must prove by clear and convincing evidence that an employee qualifies for an exemption.
 
 See Shockley v. City of Newport News,
 
 997 F.2d 18 (4th Cir.1993). With these considerations in mind, the three requirements of the “short test,” and their application to Haines’ employment at Southern Retailers, will be discussed in turn.
 

 1. Salary basis of not less than $250 per week.
 

 There is no dispute that this component of the test is satisfied.
 

 2. Customary and regular direction of two or more other employees.
 

 The second part of the “short test” for determining whether an employee is an “executive” requires that the employee customarily and regularly direct the work of at least two other employees. 29 C.F.R. § 541.105(a) defines the term “two or more other employees” as used in the short test, to require that the putative “executive” must customarily and regularly supervise “at least two full-time employees or the equivalent.”
 
 Id.
 
 The “equivalent” of a full-time employee
 
 *446
 
 is two part-time employees.
 
 Id.
 
 Therefore, under the regulations, if an employee supervises one other full-time employee and two part-time employees, this requirement would be met.
 
 Id.
 
 In addition, it is not required that the executive employee be actually present at the store at the time the other employees are working to be “supervising” them.
 
 See Meyer v. Worsley Cos., Inc.,
 
 881 F.Supp. 1014, 1018 n. 1 (E.D.N.C.1994).
 

 Haines disputes that she regularly and customarily directed the work of two or more other employees. However, her position is not supported by the record. Indeed, Haines’ own deposition shows that she regularly served as manager in stores employing between two and four other full-time employees.
 
 See
 
 Haines Deposition at 103-105. Haines’ only evidence to the contrary is that, for a period of eight weeks, the store that she managed was staffed with only one other full-time employee.
 
 See
 
 Haines Affidavit at ¶ 7. Taken as a whole, however, the record reflects that even this assertion is too frail to support Haines’ claim because, notwithstanding that only one permanent full-time employee was assigned to the store during that eight week period, the store was staffed by other employees not permanently assigned to the store.
 
 See
 
 Defendant’s Reply Brief, Exh. A (Sullivan Afft II). Thus, for most, if not all of this period, Haines supervised two other employees. Furthermore, Haines’ position, even if factually correct, would be legally unavailing because, during the remainder of Haines’ three-year employment, she supervised at least two full-time employees. This suffices to meet the “regularly and customarily” requirement of the second part of the test.
 

 The query, therefore, is narrowed to whether Haines’ “primary duties” were the “management” of the “enterprise” or a “subdivision thereof.”
 

 3. Primary Duty Consists of Management.
 

 To be an executive, the employee’s primary duty must consist of the management of the enterprise in which she is employed or of a customarily recognized department or subdivision of that enterprise. 29 C.F.R. § 541.119. There are three separate components to this third short test requirement: (a) that the employee manages the enterprise or a recognized subdivision of the enterprise; (b) that the employee engage in managerial activities; and (c) that the employee’s primary duty consists of these managerial activities.
 

 a. Managing an Enterprise or Recognized Subdivision.
 

 Assuming for the moment that Ms. Haines’ employment at Southern Retailers involved sufficient managerial responsibilities, her position as Store Manager certainly would be considered managing a “subdivision” of Southern Retailers. 29 C.F.R. § 541.104 defines the term “recognized subdivision” as used in the § 541.119 short test. The regulation states that:
 

 [I]t is clear that where an enterprise comprises more than one establishment, the employee in charge of each establishment may be considered in charge of a subdivision of the enterprise.
 

 29 C.F.R. § 541.104(b). It is clear that each individual Southern Express convenience store meets the definition of “subdivision.”
 
 See Horne v. Crown Cent. Petroleum,
 
 775 F.Supp. 189, 190 (D.S.C.1991) (holding that a convenience store is a customarily recognized department or subdivision of an enterprise);
 
 see also Meyer v. Worsley Cos., Inc.,
 
 881 F.Supp. 1014 (E.D.N.C.1994);
 
 Russell v. Mini Mart, Inc.,
 
 711 F.Supp. 556 (D.Mont. 1988).
 

 b. Management Duties.
 

 The regulations define what is meant by “management” duties at 29 C.F.R. § 541.102. The regulations also provide a long list of exemplary managerial duties:
 

 [I]t is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose
 
 *447
 
 of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies.
 

 29 C.F.R. § 541.102(b). The focus necessarily must be on what “activities or duties the employee
 
 actually
 
 performs.”
 
 Meyer v. Worsley Cos., Inc.,
 
 881 F.Supp. 1014, 1019 (E.D.N.C.1994);
 
 see also Cohn v. Decca Distributing Carp.,
 
 50 F.Supp. 270 (E.D.Pa. 1943) (empty title of “assistant manager” could not circumvent the overtime compensation provisions of the FLSA).
 

 Based on the undisputed facts in the record, there is little doubt that Haines’ role at the Southern Express convenience stores included managerial duties. The record establishes,
 
 inter alia,
 
 the following:
 

 1. Haines usually, if not always, prepared the weekly schedule for the employees of her store; no other employee at Haines’ store had such responsibility.
 
 See
 
 Haines Deposition at 36, 37, 106, 107, 108, 112, 113; Defendant’s Motion for Summary Judgment, Exh 2 (Grimes Affd), Exh. 3 (Sullivan Affd I).
 

 2. Haines regularly dealt directly with the disciplining and evaluation of employees.
 
 See
 
 Haines Deposition at 24, 69, 75, 77, 87, 96-97; Grimes Affd; Sullivan Affd I;
 
 see also
 
 Deposition Exhibits 4-9, 10-12 (employee evaluation/diseiplinary forms filled out by Haines in 1993 and 1996).
 
 [4]
 

 3. Haines was responsible to some extent for staffing her store.
 
 See
 
 Haines Deposition at 50.
 

 4. Haines dealt with any customer complaints about the service received at her store.
 
 See
 
 Haines Dep. at 119.
 
 [5]
 

 5. Haines regularly ordered supplies to stock her store according to guidelines provided by senior management; Haines also dealt with the checking-in of vendors.
 
 See
 
 Haines Dep. at 121-22, 125, 142; Grimes Affd; Sullivan Affd I.
 

 6. Haines had the keys to, and authority for, both the safe and the cash register in her store; no other employee in the store had access to these keys.
 
 See
 
 Haines Deposition at 48.
 

 7. Haines was ultimately responsible for anything that occurred at the store.
 
 See
 
 Haines Deposition at 140; Grimes Affd; Sullivan Affd I.
 

 8. Haines monitored the activities of the employees in her store based on a checklist devised by senior management.
 
 See
 
 Haines Deposition at 140.
 

 9. Haines was responsible for analyzing shift sales to determine the gasoline levels and ordering gasoline as needed.
 
 See
 
 Haines Deposition at 132, 141; Grimes Affd; Sullivan Affd.
 
 [6]
 

 10. Haines had the authority to recommend to a supervisor that an employee be fired, and had the authority to temporarily suspend an employee without approval from senior management.
 
 See
 
 Haines Deposition at 22, 23, 87, 96; Thrower Affd at ¶ 11.
 

 11. After the Fall of 1995, Haines prepared and delivered the bank deposit; no other employee at Haines’ store had the authority to do so.
 
 See
 
 
 *448
 
 Haines Deposition at 102-03, 120; Haines Affidavit at ¶ 9.
 

 12. After December, 1995, Haines was actively involved in the hiring process of non-exempt workers; Haines interviewed applicants, checked references, and then forwarded the applications to senior management.
 
 See
 
 Haines Deposition 56-58.
 

 It is apparent from the record, and the parties seem to agree, that Haines’ managerial responsibilities evolved over time. It is also undisputed that when Haines was not engaged in these managerial duties, she performed tasks ordinarily performed also by the non-exempt store clerks whom she supervised (i.e. sales, cleaning, stocking shelves, etc ...). Notwithstanding this apparent evolution of responsibility, however, the record is clear that, under the definition of “management” found in 29 C.F.R. § 541.102(b), and as a matter of law, Haines performed a variety of managerial functions while employed as a manager by Southern Retailers.
 

 Haines’ employment situation is analogous to that of the convenience store manager in
 
 Meyer v. Worsley,
 
 881 F.Supp. 1014 (E.D.N.C.1994). In
 
 Meyer,
 
 the manager performed a number of managerial duties similar to those performed by Haines: (i) setting employee schedules; (ii) participation in the hiring of employees; (iii) consulting with supervisors respecting the performance of the employees under her supervision; (iv) monitoring and ordering inventory; (v) making bank deposits; and (vi) staffing the store. In
 
 Meyer,
 
 the district court concluded that the plaintiffs job involved “management” as defined in 29 C.F.R. § 541.102.
 
 Id.
 
 at 1019-20.
 

 [I]t is quite plain from plaintiffs deposition testimony that he considered himself to be responsible for the [] store, that he was “in charge” of the daily operations.
 

 Id.; see also Donovan v. Burger King Corp.,
 
 672 F.2d 221 (1st Cir.1982) (holding that Burger King assistant managers engage in “management” under the FLSA because they schedule employees, assign work, speak with customers, train employees, keep records and inventory);
 
 Murray v. Stuckey’s Inc.,
 
 939 F.2d 614 (8th Cir.1991) (holding that Stuckey’s managers engaged in “management” under the FLSA because they were in charge of the day-to-day operations of the store, participated in hiring workers, supervised store employees, ordered inventory, handled customer complaints, and safeguarded receipts). As a matter of law, then, Haines’ employment at Southern Retailers involved “management” as that term is defined under the guidelines.
 

 c. Primary Duty.
 

 A determination of whether an employee has management as his primary duty “must be based on all the facts in a particular case.” 29 C.F.R. § 541.103. There are five factors set forth in § 541.103 to determine if management is the primary duty of an employee: (i) the amount of time spent in the performance of the managerial duties; (ii) the relative importance of the managerial duties as compared with other types of duties; (iii) the frequency with which the employee exercises discretionary powers; (iv) the employee’s relative freedom from supervision; and (v) the relationship between the employee’s salary and the wages paid other employees for nonexempt work.
 

 i. Amount of Time Spent of Managerial Duties.
 

 As the regulations recognize, “[t]he amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee.” 29 C.F.R. § 541.103. The regulations provide the following “rule of thumb”:
 

 In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee’s time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty.
 

 Id.
 
 Although percentage of time spent in managerial work is a factor in the primary duty analysis, it is not determinative. Indeed, the regulation provides an example in § 541.103 which states that:
 

 [I]n some departments, or subdivisions of an establishment, an employee has broad
 
 *449
 
 responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require.
 
 He will be considered to have management as his primary duty.
 

 Id.
 
 (emphasis added).
 
 [7]
 
 This example is closely analogous to the circumstances of Haines’ employment situation at Southern Retailers.
 

 The record discloses that there is a factual dispute respecting the percentage of time which Haines spent on “managerial” activities. Southern Retailers has submitted three affidavits from persons who, either presently or formerly, were senior management of the company and who worked with Haines.
 
 See
 
 Sullivan Affd I; Defendant’s Reply Brief Exh. B (Thrower Affd); Exh. C (Sprouse Affd). All three affiants declare that Haines spent over 50 percent of her time performing-executive functions.
 
 See
 
 Sullivan Affd at ¶ 2; Thrower Affd at ¶20; and Sprouse Affd at ¶20. Not surprisingly, Haines has filed a responding affidavit that approximately 90 percent of her time was spent in the performance of non-managerial duties. Haines Affd at ¶ 13. Taken as a whole, the record establishes that somewhere between 10 percent and 50 percent of Haines’ time was devoted to performing managerial responsibilities.
 

 This factual dispute over the percentage of time Haines spent pursuing executive functions does not preclude summary judgment for Southern Retailers for several reasons. First, the five-factor test used to determine the “primary” responsibility of an employee is a “weighing test,” and Haines’ employment situation satisfies the overall test even if a factual issue remains as to the one factor.
 
 See Horne v. Crown Cent. Petroleum, Inc.,
 
 775 F.Supp. 189 (D.S.C.1991) (“That the amount of time spent on non-management tasks is greater than fifty percent is not dispositive, particularly when non-management duties are performed simultaneous to the supervision of employees or other management tasks and
 
 other factors support a finding that the employee’s primary duty is managerial ”)
 
 (emphasis added).
 

 Second, the descriptive example provided in § 541.103 is closely analogous to Haines’ employment situation; and, under it, an employee may qualify for the “executive exemption” even if the majority of the employee’s time is in the performance of non-exempt functions.
 
 See Donovan,
 
 672 F.2d at 226 (relying on same example in § 541.103 in holding that Burger King assistant managers had the “primary duty” of “management” despite the fact that over fifty percent of their time was spent on routine matters).
 

 Most significantly, as recognized by the district court in
 
 Meyer,
 
 a number of federal courts have “disregarded the time factor of the ‘short test’ where the manager is in charge of a separate facility such as a convenience store or restaurant chain location.” 881 F.Supp. at 1014;
 
 see, e.g.,
 
 672 F.2d at 226 (“a time division is somewhat misleading here: one can still be ‘managing’ if one is in charge even while physically doing something else. The 50 percent rule seems better directed at situations where the employee’s management and non-management functions are more clearly severable than they are here”);
 
 Horne,
 
 775 F.Supp. at 190 (“The court makes no exact finding of the percentage of plaintiffs work time spent on these management tasks beyond noting that such functions would necessarily consume a significant portion of the work day”);
 
 Glefke v. K.F.C. Take Home Food,
 
 1 Wage & Hour Cas .2d (BNA) 1080, 1993 WL 521993 (D.Mich.1993). In
 
 Murray v. Stuckey’s Inc.,
 
 939 F.2d at 618, the Eighth Circuit found that a Stuckey’s manager met the “primary duty” test notwithstanding that between 65 and 90 percent of the employee’s time was spent on non-managerial duties.
 
 See also Guthrie v. Lady Jane Collieries, Inc.,
 
 722 F.2d 1141 (3d Cir.1984) (employee qualified
 
 *450
 
 for “executive exemption” despite the fact that only 31.65 percent of his time was spent on exempt matters).
 

 Thus, Haines’ employment with Southern Retailers satisfies the first prong of the “primary duties” test as a matter of federal law even though there is a dispute respecting exactly what percentage of time she devoted to managerial duties.
 

 ii. Relative Importance of Managerial Duties.
 

 The second factor of the primary duty test is the relative importance of the management tasks performed as compared with the importance of the non-management tasks performed. As was true with the salaried managers in the previously cited decisions, Haines “down-play[s] and minimize[s] the importance of [her] position, testifying that [she] spent most of her time performing routine non-managerial jobs.”
 
 Meyer,
 
 881 F.Supp. at 1020;
 
 see also, e.g. Stuckey’s,
 
 939 F.2d at 618;
 
 Donovan,
 
 672 F.2d at 227;
 
 Horne,
 
 775 F.Supp. 189. The courts have tended to reject such post-hoc efforts to minimize the relative importance
 
 of
 
 managerial duties.
 
 Id.
 
 In both
 
 Donovan,
 
 675 F.2d at 521, and
 
 Horne,
 
 775 F.Supp. at 190, the courts framed this query as a measure of the significance of the managerial tasks to the success of the facility. In
 
 Home,
 
 the district court stated that, much like the case at bar, “the tasks regularly performed by the store clerks were not nearly as crucial to the store’s success as were the management functions. The clerks merely rowed the boat; [the plaintiff] charted and steered its course.” 775 F.Supp. at 191. Also similar to the case at bar, in
 
 Home
 
 the manager received the praise or blame over whatever happened at the store, good or bad. Id. at 190.
 

 Based on those decisions, and on the undisputed facts in the record, Haines’ employment meets the second part of the “primary duties” test.
 

 iii. & iv. Exercise of Discretionary Powers and Relative Freedom From Supervision.
 

 The frequency of the exercise of discretion and the freedom from direct supervision are the significantly-overlapping third and forth factors of the “primary duties” test. To qualify as a bona fide executive, § 541.107 requires that the employee regularly exercise discretionary powers. 29 C.F.R. § 541.107(a). “The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-today performance of his duties.” 29 C.F.R. § 541.107(b). However, the requirement is not met by “the occasional exercise of discretionary powers.”
 
 Id.
 

 Haines asserts that her employment with Southern Retailers fails the third and fourth factors of the primary duty test because she was closely supervised by senior managers. Haines points to the facts that: she could not hire or fire without outside management’s approval; she performed many of her duties pursuant to the strict guidelines promulgated by senior management; she was not permitted to discipline employees without the approval of her supervisor, and she was subject to rigid supervision and regular visits by upper management. Haines’ claims are similar to those of plaintiffs in a number of other decisions. See,
 
 e.g., Meyer,
 
 881 F.Supp. at 1020;
 
 Stuckey’s,
 
 939 F.2d at 619;
 
 Home,
 
 775 F.Supp. at 190;
 
 Donovan,
 
 672 F.2d at 226. And, they are equally unconvincing. Those courts uniformly rejected such arguments, holding that, notwithstanding the existence of close supervision by upper management, manager positions similar to that held by Haines are vested with enough discretionary power and freedom from supervision to qualify for the executive exemption.
 
 See, e.g., Meyer,
 
 881 F.Supp. at 1016, 1020-21 (executive exemption applies despite the fact that upper management “employed a very direct, hands-on supervisory style,” stopping on frequent visits and requiring highly standardized practices, allowing managers “little input” into the nature and quality of the inventory);
 
 Horne,
 
 775 F.Supp. at 190 (same);
 
 Donovan,
 
 672 F.2d at 226 (same);
 
 Stuckey’s,
 
 939 F.2d at 619 (same, stating:
 
 “Like other courts that have considered the question, we believe that the manager of a local store in a modem multi-store organization has management as his or her primary duty even though the
 
 
 *451
 

 discretion usually associated with management may be limited by the company’s desire for standardization and uniformity”)
 
 (emphasis added).
 

 The same is true for Haines. Thus, even construing the facts in the light most favorable to Haines, as the Court is required to do, Haines’ employment satisfies the third and fourth factors of the “primary duties” test as a matter of law.
 

 v. Relationship of Salary to NonExempt Workers’ Pay.
 

 The fifth factor to be considered in the “primary effect” test is the relationship of the employee’s pay to that of those she supervises. In this action, it is undisputed that Haines earned between $350.00 and $425.00 per week, while her clerks made approximately $5.00-$6.50 per hour.
 
 See
 
 Haines Deposition at 158-59. Haines testified that an employee working a forty-hour week would make about half as much as she would.
 
 Id.
 
 at 159.
 

 In
 
 Home,
 
 the plaintiff-manager earned $357.00 per week while her clerks earned between $4.50 and $5.10 per hour. 775 F.Supp. at 190-91. “The difference in pay brings this factor in line with finding that [the plaintiff] is within the executive exemption.”
 
 Id.
 
 at 191. In
 
 Topel v. Northern Virginia Sun, Inc.,
 
 77 Lab.Cas. (CCH) ¶ 33,-274, 1973 WL 1063 (E.D.Va.1973),
 
 affd,
 
 22 Wage & Hour Cas. (BNA) 318, 77 Lab.Cas. $33,275, 1975 WL 3573 (4th Cir.1975), the district court looked at the rate of pay between the employees. Because the plaintiff was being compensated at a rate higher than the other employees, the court held that paying him overtime would constitute a premium windfall.
 
 Id.
 

 Those decisions are equally dispositive here. Based on them and the factual record in this action, Haines’ employment for Southern Retailers satisfies this fifth factor of the “primary duty” test as a matter of law.
 

 CONCLUSION
 

 For the reasons set forth above, Southern Retailers’ Motion For Summary Judgment is granted. Based on the undisputed factual record in the case and, as a matter of law, Haines’ employment for Southern Retailers satisfies all three prongs of the “short test” in 29 C.F.R. § 541.119. First, she is a “highly paid executive” because she was paid a salary of not less than $250 per week. Second, she regularly and customarily directed the efforts of at least two other full-time employees or the equivalent. Lastly, based both on the Department of Labor regulations and the federal case law, Haines’ employment satisfies all five factors of the “primary duties test.”
 

 It is so ORDERED.
 

 [1]
 

 . Section 7(a) states:
 

 Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1).
 

 [2]
 

 . 29 U.S.C. § 213(a) states:
 

 The provisions of sections 206 and 207 of this title shall not apply with respect to—
 

 (1) any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act ...).
 

 [3]
 

 . A "highly paid executive” who meets each part of this short test is deemed to meet all the requirements of the “long test” found in § 541.1.
 
 Id.
 
 ("If an employee qualifies for exemption under this proviso, it is not necessary to test that employee’s qualifications in detail under paragraphs (a) through (f) of § 541.1 of this part”). Where a "highly paid executive”
 
 fails
 
 to meet all the requirements of the short test, he/she additionally fails the long test, because requirements (2) and (3) above comprise two of the six factors of the long test.
 

 [4]
 

 . Haines’ contention in her Response Brief that she only had such duties as of February, 1996 is directly contrary to Deposition exhibits 4-8 which are dated from 1993.
 

 [5]
 

 . Haines' claim that there was only one such customer complaint is irrelevant. This claim merely evidences the fact that she did, in fact, deal with such complaints, however infrequently they were filed.
 

 [6]
 

 . Haines’ assertion in her Response Brief that she did not actually have to account for gasoline usage because that function was conducted by a computer is irrelevant and does not raise a material issue of fact. The fact that she was aided in her responsibilities by modem technology does not in any way alter the fact that gasoline orders were her sole responsibility.
 

 [7]
 

 . Federal courts have also held that an employee can qualify for the executive exemption where less than one-half of his time is spent engaging in “managerial” duties.
 
 See infra.