Robbie Sue THOMAS, Plaintiff,

v.

JONES RESTAURANTS, INC., d/b/a Sonic of Clanton, Defendant.

No. Civ.A. 99–T–130–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 14, 1999.

William H. Benson, III, John F. Kizer, Jr., LLC, Birmingham, AL, John F. Kizer, Jr., John F. Kizer, Jr., LLC, Birmingham, AL, for plaintiff.

Steven J. Allen, Brunini, Grantham, Crower & Hewes, Jackson, MS, Stephen J. Carmody, Brunini, Grantham, Crower & Hewes, Jackson, MS, for defendant.

*OPINION*

MYRON H. THOMPSON, District Judge.

Plaintiff Robbie Sue Thomas filed this lawsuit against defendant Jones Restaurants, Inc. (hereinafter referred to as JRI), d/b/a Sonic of Clanton, charging it with failing to pay her overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219 (commonly known as the FLSA), and with constructively dis-

charging her in violation of the common law of the State of Alabama. The court has subject-matter jurisdiction over Thomas's federal claim under 28 U.S.C.A. §§ 1331 (federal question) and 1337(a) (interstate commerce regulation) and supplemental jurisdiction over her state-law claim under 28 U.S.C.A. § 1367(a). This lawsuit is currently before the court on JRI's motion for summary judgment. For the reasons that follow, the court will enter summary judgment in favor of JRI and against Thomas on her FLSA claim, and her state-law claim will be dismissed without prejudice.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for its motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in pleadings. See Fed.R.Civ.P. 56(e).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine whether a genuine issue exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL SUMMARY

The facts, taken in the light most favorable to Thomas, are as follows: From January 1991 until October 1998, Thomas was employed as the manager of the Sonic fast-food restaurant located in Clanton, Alabama.[1] JRI purchased the Clanton Sonic in August 1998.[2]

As manager of the Clanton Sonic under JRI's ownership, Thomas was answerable for the restaurant's performance.[3] She was also solely in charge of the restaurant while she was at work, except for when her supervisor, Chip Luke, stopped by to check on business.[4] Thomas's specific duties were the following: interviewing and hiring employees;[5] setting and adjusting employees' work schedules;[6] directing the work of employees;[7] disciplining and firing employees;[8] handling employee complaints and grievances;[9] maintaining production and sales records;[10] determining the work techniques to be used;[11] apportioning work to em-

---

1. *See* Plaintiff's complaint, filed February 12, 1999, ¶¶ 2, 4, 21.

2. *See id.* ¶ 6.

3. *See* Deposition of Robbie Sue Thomas at 43

4. *See id.* Luke was a very hands-on supervisor, calling Thomas at work ten to 15 times a day and stopping by the restaurant three to seven days a week. *See id.* at 43–44.

5. *See id.* at 67.

6. *See id.* at 64–65

7. *See id.* 48–51, 67–68.

8. *See id.* at 68–69.

9. *See id.* at 68.

10. *See id.*

11. *See id.* at 69–70.

ployees and ensuring that the work was done safely;[12] accounting for inventory and preventing theft;[13] assuring product quality;[14] doing the work of unexpectedly absent employees;[15] balancing the books and making bank deposits;[16] ensuring that receipts matched register sales;[17] ensuring that the employees maintained the facility;[18] and completing paperwork on a daily basis.[19] Some of these duties were also performed by the assistant manager;[20] however, Thomas was ultimately responsible for the performance of these duties.[21]

After JRI purchased the Clanton Sonic, it reduced Thomas's weekly salary from $ 500 to $ 350; however, JRI gave her a $ 150 weekly bonus, with the result that her weekly income always remained at $ 500.[22] JRI continued to give her a monthly bonus as well, but the bonus was greatly reduced from the $ 1,250 she had received in the past and was less frequent.[23] However, despite decreasing her pay overall, JRI required Thomas to work longer hours and to take a more frequent and detailed inventory of the Clanton Sonic's food and payroll than had been required by the restaurant's previous owner.[24] Specifically, JRI required Thomas to work seven days a week, for a total of 70 to 100 hours a week[25]; as Thomas put it, she was required to count "each individual 'tater-tot.'"[26]

On October 7, 1998, Thomas visited a doctor.[27] The doctor told Thomas that she had two ulcers that were directly related to her work stress.[28] Three days later, on October 10, Thomas told her supervisor, Luke, that she could not continue working at the Clanton Sonic under the existing work conditions and that she had to have more help at the restaurant.[29] Luke did not respond to her request, and Thomas resigned on October 13.[30]

Thomas filed this lawsuit on February 12, 1999, claiming that JRI denied her overtime pay in violation of the FLSA. She also claims that she was constructively discharged in violation of Alabama common law; she alleges that her medical difficulties, which were caused by the restaurant's work conditions, forced her to quit. She seeks compensatory and liquidated damages in the amount of $ 350,000 and costs.

## III. DISCUSSION

In its motion for summary judgment, JRI contends that both Thomas's FLSA claim and her constructive discharge claim are meritless.[31] Specifically, first, JRI argues that Thomas's FLSA claim should be dismissed because there is no genuine issue of material fact that Thomas was an 'employee employed in a bona fide executive capacity' and therefore was exempt from the FLSA's protection as a matter of law.[32] Second, JRI contends that Thom-

---

**12.** *See id.* at 70.

**13.** *See id.* at 62.

**14.** *See id.* at 72.

**15.** *See id.*

**16.** *See id.* at 54.

**17.** *See id.* at 55.

**18.** *See id.* at 61.

**19.** *See id.* at 71.

**20.** *See id.* at 54, 68, 72.

**21.** *See id.* at 43.

**22.** *See id.* at 31–36.

**23.** *See id.*

**24.** *See* Plaintiff's complaint, filed February 12, 1999, ¶¶ 8, 10.

**25.** *See id.* ¶ 9, 12.

**26.** *Id.* ¶ 10.

**27.** *See id.* ¶ 16.

**28.** *See id.*

**29.** *See id.* ¶ 18.

**30.** *See id.* ¶ 21.

**31.** *See* Defendant's motion for summary judgment, filed July 23, 1999, at 1.

**32.** *See* Defendant's brief in support of its motion for summary judgment, filed July 23, 1999, at 6.

as's constructive discharge claim is meritless because Alabama does not recognize a claim for constructive discharge of an at-will employee, unless, unlike in this case, a federal discrimination law is at issue, and it is undisputed that Thomas was an at-will employee.[33] In support of its summary-judgment motion, JRI relies on the statements made by Thomas in her deposition, which is the only evidence that the parties have submitted.

Thomas, on the other hand, contends that she is not exempt from the FLSA's coverage[34] and that her constructive discharge violates Alabama's public policy and is therefore actionable.[35]

### A. Thomas's FLSA Claim

Congress enacted the FLSA in order to help eliminate the existence of labor conditions that are detrimental to the health, efficiency, and welfare of workers in the United States. *See* 29 U.S.C.A. § 202(a). Toward that end, the FLSA includes a maximum-hour provision, which requires that employers pay employees at least one and one-half their regular pay for hours worked in excess of 40 hours a week. *See id.,* § 207(a)(1).[36]

However, "[t]he goal of ameliorating the uglier side of a modern economy did not imply that all workers were equally needful of protection" by the FLSA. *Nicholson v. World Bus. Network, Inc.,* 105 F.3d 1361, 1363 (11th Cir.), *cert. denied,* ___ U.S. ___, 118 S.Ct. 368, 139 L.Ed.2d 287 (1997). The FLSA, therefore, exempts certain workers from its protection. For example, the maximum-hour provision does not protect an "employee employed in a bona fide executive . . . capacity." 29 U.S.C.A. § 213(a)(1).

Section 213(a)(1) expressly provides that the term 'bona fide executive' shall be defined and delimited from time to time by the Secretary of Labor. The regulations implementing the FLSA define an 'employee employed in a bona fide executive capacity' as any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department o[r] subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and

---

33. *See id.* at 7.

34. *See* Plaintiff's brief in opposition to motion for summary judgment, filed August 18, 1999, at 4–5.

35. *See id.* at 5–6.

36. Section 207(a)(1) provides, in part, that:
"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

"(f) Who is compensated for his services on a salary basis at a rate of not less than $ 155 per week (or $ 130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: *Provided,* That an employee who is compensated on a salary basis at a rate of not less than $ 250 per week (or $ 200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two of more other employees therein, shall be deemed to meet all the requirements of this section."

29 C.F.R. § 541.1.

■ Section 541.1 creates two tests, either of which an employee can satisfy to be deemed 'employed in a bona fide executive capacity.' The first, known as the 'long test,' is described in subsections (a) through the first part of subsection (f) of § 541.1; the second, known as the 'short test,' is described in the latter part of subsection (f). *See Brock v. Norman's Country Mkt., Inc.,* 835 F.2d 823, 825 (11th Cir.), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988). The burden is on the employer to demonstrate that the employee is 'employed in a bona fide executive capacity,' *see id.* at 826, and this exemption, like each of the other exemptions to the FLSA, is to be narrowly construed against the employer. *See Nicholson,* 105 F.3d at 1364; *Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir.1994).

An employee who receives a salary of at least $ 250 a week need satisfy only the 'short test' in order to be 'employed in a

bona fide executive capacity.' *See* 29 C.F.R. §§ 541.1(f), 541.119(a). It is undisputed that Thomas received a salary of at least $ 250 a week during her tenure at the Clanton Sonic while it was owned by JRI and that she therefore need only satisfy the short test.[37]

The short test has two requirements in addition to the $ 250 a week salary minimum. First, the employee's 'primary duty' must consist of the 'management' of the enterprise in which she is employed, or in a department or subdivision thereof; and, second, the employee must customarily and regularly direct two or more employees other than herself. *See id.*

Regarding the second requirement, Thomas concedes that, while she was employed at the Clanton Sonic under JRI's ownership, she regularly directed at least two employees other than herself.[38] Therefore, the only issue in dispute is whether Thomas's primary duty was the management of the restaurant.[39]

The regulations define 'management' to include the following: "[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; [and] providing for the safety of the men and the property." *Id.,* § 541.102(b).

Thomas acknowledges in her deposition that she performed management duties.[40]

37.  *See id.* at 4.

38.  *See id.*

39.  *See id.*

40.  *See id.*

However, she contends that her deposition testimony presents a fact issue over whether they were her 'primary duty.'[41] The court cannot agree.

The regulations provide the following guidelines regarding the 'primary duty' requirement:

"A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor."

*Id.*, § 541.103.

■ The court interprets § 541.103 to provide two alternative tests for determining whether an employee has management as his primary duty. The first test is based on the amount of time spent in management duties—if the employee spends over 50% of his time performing management duties, then he has management as his primary duty. *See id.*, § 541.103. However, if the employee does not satisfy the first test, then the second test comes into play. Under the second test, the court must determine whether, on balance, 'other pertinent factors,' including the four listed in § 541.103—the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor—support the conclusion that the employee has management as his primary duty. *See id.*

Some courts apply § 541.103 as if it provides only a single test, with the time spent in the performance of managerial duties to be weighed equally along with each of the 'other pertinent factors' to determine whether an employee's primary duty is management. *See, e.g., Donovan v. Burger King Corp.*, 675 F.2d 516, 520–21 (2d Cir.1982). The text of § 541.103 arguably supports bundling the time factor with the 'other pertinent factors' so as to have only a single test. For instance, § 541.103 begins, "A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case," and later states that "[t]ime alone ... is not the sole test."

This court, however, believes that the text of § 541.103 is more accurately read to provide the two, alternative tests described above. The court's reasoning is three-fold. First, the regulation provides that the amount of time an employee spends in the performance of managerial duties is both "a useful guide" and "a good rule of thumb" in determining whether his primary duty is management. 29 C.F.R. § 541.103. Second, the regulation states, "Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty." *Id.* That statement implies that the 'other pertinent factors,' which are not mentioned until later in the regulation's text, are not to be considered unless the employee does not spend over 50 % of his time in management. Third, and similarly, the phrase,

---

**41.** *See id.* at 4–5.

"Time alone, however, is not the sole test," introduces the statement, "in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." *Id.* For these reasons, the court believes that the 'other pertinent factors' need not be considered unless the employee does not spend at least 50 % of his time in management. *See Hays v. City of Pauls Valley,* 74 F.3d 1002, 1007 (10th Cir.1996) ("When an employee spends less than 50 percent of his time on management [the] four other factors should be considered.").

Thomas has provided four reasons why JRI has failed to meet its burden of demonstrating that her primary duty was management. First, according to Thomas, her deposition demonstrates that she "spent a significant portion of time performing non-managerial duties," and that she shared her management duties with an assistant manager when they were at the restaurant together.[42] Second, she had little discretionary power.[43] Third, "[a]ll of her actions were under the careful supervision of Chip Luke, either by telephone or in person."[44] And fourth, "[JRI] has provided no evidence of Thomas' salary compared to other employees."[45]

Because JRI has the burden of proving that Thomas was exempt from the FLSA's protection, *see Brock,* 835 F.2d at 826, it must demonstrate that there is not a fact issue that Thomas's primary duty is management. JRI apparently assumes that,

because Thomas admittedly engaged in most of the management activities listed in § 541.102(b), she spent over 50 % of her time performing those duties.[46] Of course, the fact that Thomas engaged in management duties is, alone, not dispositive, as that fact does not indicate whether those duties were her primary duty. Furthermore, JRI has not pointed to a specific statement by Thomas which specifies that she spent over 50 % of her time in management. Thomas has not expressly stated how much time she spent on management duties. Even so, the dispositive fact is that, in spite of Thomas's assertion to the contrary, nothing in her testimony presents a fact issue that Thomas spent a significant amount of time doing anything other than management.

As discussed, Thomas testified that she performed the majority of the management duties listed in § 541.102(b).[47] The only evidence that Thomas spent time doing something other than those management duties is her statement that before JRI purchased the Clanton Sonic she would customarily help her staff prepare and serve the food, at least when they "got[ ] behind."[48] "I was always used to helping [the crew]. I'd get in there and work with the rest of them."[49] However, that practice changed, or at least JRI told her that it expected that practice to change, once JRI purchased the restaurant.[50] Specifically, one day after he had observed Thomas helping her crew prepare and serve lunch, Luke ordered Thomas to stand "at the end of th[e] counter" and only supervise, not actually assist, the crew.[51] Furthermore, Luke ordered

42. Plaintiff's brief in opposition to motion for summary judgment, filed August 18, 1999, at 4–5.

43. *See id.* at 5.

44. *Id.*

45. *Id.*

46. *See* Defendant's brief in support of its motion for summary judgment, filed July 23, 1999, at 6. The court has not considered JRI's reply brief, filed September 7, 1999, because it was filed 20 days after the August 18, 1999,

submission deadline which this court imposed by its July 27, 1999, order.

47. *See* Deposition of Robbie Sue Thomas at 48–72.

48. *Id.* at 73–74.

49. *Id.* at 73.

50. *See id.* at 74.

51. *Id.* at 73.

Thomas to do that "from now on." [52] Although Luke's order was clear to Thomas, she testified that once Luke left the restaurant she "got back in there and helped them out." [53] .

■ While Thomas's testimony indicates that she did, at times, help her crew prepare and serve food, a non-management duty, her doing so was in defiance of her supervisor's order, and presumably JRI's policy. Furthermore, Thomas testified that she helped her crew prepare and serve food only when they "got[ ] behind." [54] Nothing in her testimony indicates that Thomas helped prepare and serve the food on a regular basis. Therefore, a reasonable jury could not conclude that Thomas spent at least half of her time—that is, at least 35 hours a week—preparing and serving food. Moreover, the only other non-management tasks that Thomas mentioned in her deposition were maintaining the Sonic's machinery and cleaning the facility, but she testified that these tasks were performed by her staff, not herself.[55] Under these circumstances, there is no genuine issue of material fact that Thomas spent over half of her time in management.

Therefore, the court finds as a matter of law that Thomas's primary duty was management. Thomas satisfies the 'short test' of § 541.1 and is exempt from 29 U.S.C.A. § 207 under 29 U.S.C.A. § 213(a)(1). While it is, therefore, unnecessary for the court to apply the alternative, or 'other pertinent factors,' test of 29 C.F.R. § 541.103, the court will discuss the application of 'other pertinent factors' because they lead the court to the same conclusion.

In *Donovan v. Burger King Corporation*, 675 F.2d 516 (2d Cir.1982), the Secretary of Labor brought suit against Burger King under the FLSA, claiming that Burger King failed to pay overtime compensation to designated assistant managers and to keep related records. *See* 675 F.2d at 517. Burger King raised the affirmative defense that the assistant managers were 'bono fide executive' employees under 29 U.S.C.A. § 213(a)(1) and therefore were exempt from both the overtime and the recording keeping requirements. *See id.* After a bench trial, the trial court found that the assistant managers earning at least $ 250 a week were exempt under § 213(a)(1). *See id.*

In affirming the trial court, the Second Circuit Court of Appeals held that the assistant managers making more than $ 250 a week had management as their primary duty. *See id.* at 520. After accepting the trial court's finding that these assistant managers spent less than half of their time on management duties, the appellate court analyzed whether the assistant managers satisfied the four listed 'other pertinent factors' of 29 C.F.R. § 541.103. *See id.* at 521–22.

The appellate court found that the first factor, the relative importance of the managerial duties, weighed in Burger King's favor for two reasons. First, many Burger King employees testified that the principal responsibilities of the assistant managers were managerial and were crucial to the operation of the restaurants. *See id.* at 521. Second, much of the management of the restaurants could be carried out simultaneously with the performance of non-managerial tasks. *See id.*

Regarding the second factor, the *Burger King* court found that the assistant managers exercised discretionary powers. *See id.* They scheduled the employees' work, moved the employees from task to task, represented management with employees, hired and fired, ordered supplies based on their judgments as to future sales, dealt with the public, and dealt with cash and inventory irregularities. *See id.* Significantly, the court found that the assistant managers' discretionary power was not diminished even though they had to follow

**52.** *Id.* at 74.

**53.** *Id.*

**54.** *Id.* at 73–74.

**55.** *See id.* at 60–61.

Burger King's "remarkably detailed routine" in order to help ensure the organization's success. *See id.*

Next, the *Burger King* court found that the assistant managers were relatively free from supervision, and, therefore, the third factor weighed in Burger King's favor. *See id.* at 522. The court reasoned, "The record also shows that for the great bulk of their working time, [they] are solely in charge of their restaurants and are the 'boss' in title and in fact." *Id.* The court found that this conclusion was not diminished by the fact that the assistant managers' bosses, the restaurant managers, were available by telephone. *See id.*

Finally, the appellate court found that the fourth factor, the relationship between the assistant managers' salaries and the wages of the other employees, weighed in Burger King's favor. *See id.* The court reasoned that the record showed that the employees doing non-managerial tasks were paid minimum wage, while the assistant managers earning more than $ 250 a week were paid substantially higher wages even though they worked longer hours. *See id.* Therefore, the court concluded that the assistant managers satisfied each of the four 'other pertinent factors' and that their primary duty was managerial. *See id.*

In this case which is before the court on a summary-judgment motion, the court may not weigh the evidence, as the trial court did in *Burger King,* which was decided after a bench trial. Even so, Thomas's testimony indicates that there is no genuine issue of material fact that Thomas satisfies the first three of the four listed 'other pertinent factors.' First, although unlike in *Burger King* there is no testimony to this effect, it is obvious that the duties performed by Thomas were crucial to the Clanton Sonic's success. The Clanton Sonic, like any restaurant, would undoubtably have failed if someone, like Thomas, had not interviewed, selected, disciplined, and, when necessary, fired employees; set and adjusted employees' work schedules; directed the work of employ-ees; handled employee complaints and grievances; maintained production and sales records; determined the work techniques to be used; apportioned work to employees; accounted for inventory; assured product quality; balanced the books; made bank deposits; ensured that receipts matched register sales; ensured that the employees maintained the facility; and completed paperwork. Moreover, as discussed, the record indicates that Thomas performed few, if any, non-managerial tasks. Therefore, the importance of her managerial tasks in relation to her non-managerial tasks was monumental. The evidence does not indicate that there is a genuine issue of material fact to the contrary.

Second, as in *Burger King,* the record indicates that many of Thomas's managerial tasks—including hiring and disciplining employees, setting and adjusting work schedules, and apportioning work to employees—were discretionary. The fact that Luke, Thomas's supervisor, was very hands-on and had veto power over some of her decisions does not create a fact issue on this factor. The *Burger King* court's reasoning is equally applicable here: "The exercise of discretion ... even where circumscribed by prior instruction, is as critical to [the company's] success as adherence to 'the book.' Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made." *Id.* at 521–22; *see also Murray v. Stuckey's, Inc.,* 939 F.2d 614, 619 (8th Cir.1991) ("[W]e do not believe that the local store manager's job is any less managerial for FLSA purposes simply because he or she has an active regional manager boss. ... [T]he manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity."), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992); *Donovan v. Burger King Corp.,* 672 F.2d 221, 226 (1st Cir.1982) ("The fact that Burger King has

well-defined policies, and that tasks are spelled out in great detail, is insufficient to [negate the conclusion that supervising employees is a management duty]. Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.' "); *Haines v. Southern Retailers, Inc.*, 939 F.Supp. 441, 450 (E.D.Va. 1996) (finding that the discretion factor weighed in favor of the employer, notwithstanding that the store manager was closely supervised by upper management, because store managers are generally vested with enough discretionary power and freedom from supervision to satisfy this factor).

Third, and similarly, the record indicates that Thomas was relatively free from supervision. Thomas testified that she was "responsible for the operation of the [Sonic]" when Luke was not present.[56] Although Luke called ten to 15 times a day[57] and, initially, visited the restaurant everyday,[58] Thomas was "answerable for the performance of the [restaurant]."[59] As with the discretion issue, the fact that Luke was hands-on does not alter the fact that Thomas was ultimately responsible for the restaurant.

Admittedly, as to the fourth and final factor, there is no evidence in the record as to the wages paid to the Clanton Sonic's other employees, and thus the court cannot make a finding on the relationship between Thomas's salary and the wages paid other employees. Nevertheless, the court finds that the evidence does not present a fact issue. The regulations make clear that the four listed 'other pertinent factors' are not the only other pertinent factors to be considered; they are just "some" of the factors. 29 C.F.R. § 541.103. The presence or absence of any one factor is not determinative; instead, the court must look at the total picture. Here, on the first three of the listed four 'other pertinent factors,' the evidence is overwhelming, and the evidence is silent on the fourth factor. On balance, therefore, a reasonable jury could not find that Thomas's primary duty was not management under the 'other pertinent factors' test. Consequently, the court finds that as a matter of law Thomas is exempt from the maximum-hour provision of 29 U.S.C.A. § 207 under the 'bona fide executive' exception of 29 U.S.C.A. § 213(a)(1). The sole remaining issue is whether the court should grant summary judgment to JRI on Thomas's state–law constructive discharge claim.

**B. Thomas's Constructive Discharge Claim**

Because summary judgment will be granted on Thomas's FLSA claim, the court declines to exercise supplemental jurisdiction over her state-law claim for constructive discharge, and, accordingly, will dismiss this claim, albeit without prejudice to the pursuit of the claim in state court. *See* 28 U.S.C.A. § 1367(c)(3).[60] *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995).

A separate and appropriate judgment will be entered.[61]

56. *Id.* at 43.

57. *See id.* at 44.

58. *See id.* at 43.

59. *Id.*

60. The dismissal without prejudice of the state-law claim should not work to Thomas's disadvantage. Section 1367(d) provides for at least a 30–day tolling of any applicable statute of limitations so as to allow a plaintiff to refile her claim in state court. The section states:

"(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

61. In its summary-judgment motion filed on July 23, 1999, JRI asks for fees and costs under Rule 11 of the Federal Rules of Civil

DONE, this the 14th day of September, 1999.

Procedure and 28 U.S.C.A. § 1927.  JRI must file a separate motion for such.