**Brandon P. MOORE, on behalf of Himself and all others similarly situated, Plaintiff,**

v.

**TRACTOR SUPPLY COMPANY, Defendant.**

No. 03–81070–CIV.

United States District Court, S.D. Florida.

Dec. 10, 2004.

Joe Bilotta, Vassallo & Bilotta, Palm Springs, FL, for plaintiff.

Patrick G. DeBlasio, III, Nikki M. Setnor, Jackson Lewis LLP, Miami, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Defendant Tractor Supply Company's ("Defendant") Motion for Summary Judgment, filed October 8, 2004. Plaintiff Brandon P. Moore ("Plaintiff") responded on October 21, 2004. Defendant replied on October 29, 2004. The Court heard oral argument on this motion on December 7, 2004. This motion is ripe for adjudication.

Plaintiff worked as a store manager for Defendant's Sebring, Florida store from May 2002 through February 18, 2003. Defendant is a retailer selling farm and ranch-related equipment and products to the general public. (Pl.Depo., p. 36.) Defendant operates a number of stores in Florida, including stores in Sebring and Okeechobee. *Id.*, at 37. Each store has a manager and team members who report to the store manager. *Id.*, at 64–65. Managers report to a district manager, who, in turn, reports to a regional manager. *Id.*, at 59.

Plaintiff began his employment with Defendant in late July 2001 as a manager trainee. *Id.*, at 37. The training program required trainees to demonstrate competence in handling every aspect of a store's operations. *Id.*, at 38–39.[1] Plaintiff became manager of Defendant's Sebring store in May of 2002. When Plaintiff became a store manager, his salary increased to $35,500 per year, or $682.69 per week, and he was converted to exempt classification for purposes of Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207(a) overtime provisions. *Id.*, at 72, 210–11. Plaintiff understood that he would receive the same salary every week regardless of the quality of his work or the number of hours worked in a given workweek. *Id.*, at 211. Plaintiff was also eligible for a year-end bonus based on the store's sales. *Id.*, at 211–12. Plaintiff supervised from six to seven team members at any given time in the Sebring store, all of whom were paid an hourly rate of no more than $9.00 per hour. None of the team members were eligible for the year-end bonus. *Id.*, at 213.

As store manager, Plaintiff was responsible for managing the store's team members and overall operations. *Id.*, at 47. Plaintiff was responsible for developing the "right team" and ensuring that team members received proper training. *Id.*, at 86–87. Plaintiff admitted in his deposition that he routinely performed managerial duties including, but not limited to, the following:

- Performing 90 day and annual evaluations of his team members and resolving team member disputes and grievances at his store. Id., at 90, 94, 113; *Id.* Ex. 6 (90 day evaluation form Plaintiff completed).

- Coaching, counseling and/or disciplining team members in his store. Id., at 101–03; *Id.* Ex. 7 (corrective action forms reflecting Plaintiff's discipline of two team members).

---

1. Manager trainees are not subject to the Fair Labor Standards Act and are paid overtime wages. Plaintiff does not dispute that he was paid for all overtime hours he worked during his tenure as a trainee *Id.*, at 209.

• Partnering with Human Resources in terminating team members. *Id.,* at 104–10; Id., at Ex. 8 (forms reflecting Plaintiff's termination of three team members).[2]

• Creating and maintaining a harassment-free work environment and continually monitoring the work floor to ensure that it remained harassment-free. *Id.,* at 110–11.[3]

• Performing the initial administration of workers' compensation claims arising out of his store. *Id.,* at 111–13.

• Ensuring that new hires were trained, even if, as Plaintiff now claims, the training consisted of video demonstrations and training manuals. *Id.,* at 81–82, 86–87, 97.

• Making recommendations for temporary transfers of employees to other stores for additional training. *Id.,* at 97.

• Ensuring that the store and its team members operated according to company standards and policies. *Id.,* at 47–48.

• Addressing issues such as team member compensation, scheduling and vacations, even if, as Plaintiff now claims, store associates also performed those functions. *Id.,* at 185.

• Conducting team meetings, even though less frequently than Defendant prescribed. *Id.,* at 175.

• Managing payroll and other expenses for the store. *Id.,* at 130, 162.

• Performing other managerial duties such as monitoring and containing shrinkage.[4] opening and closing the store, making bank deposits, investigating suspicious activity reflected on sales reports and being a contact person for team members who called in sick to work, even if, as Plaintiff now claims, store associates also performed several of these functions. *Id.,* at 47, 123, 126–27, 150, 151, 155, 159, 162, 166, 168.

Plaintiff had a private office in the Sebring store and a business card reflecting his position as store manager. *Id.,* at 133, 140. Plaintiff also was invited to and attended an annual weeklong management meeting in Tennessee for managers and executives to discuss operational and management issues. *Id.,* at 180–81. Plaintiff was expected to and routinely participated in teleconferences with other managers in the district and their district manager to discuss similar issues. *Id.,* at 177.

In addition to managing the Sebring store, Plaintiff also managed the Okeechobee store from November 2002 through January 2003 due to the termination of store manager William Purcell ("Purcell"). *Id.,* at 183. Plaintiff performed the same functions at the Okeechobee store that he

2. Plaintiff attempts to downplay his role in terminations because, on one occasion, Human Resources requested that he obtain their input prior to effecting the termination. Prior review of termination decisions by Human Resources, even if true, does nothing to diminish Plaintiff's managerial role in making termination decisions.

3. *Plaintiff asserts that the phone number for* Defendant's Human Resources office was posted in the store and that employees were to call the number with questions. The posting of this phone number does not change the fact that Plaintiff was responsible for resolv-

ing in-store conflict among his team members.

4. Plaintiff's performance reviews indicate that he was evaluated, in part, on the financial health of his store, including sales, gross margin, shrinkage, total expenses, operating profit and turnover. *Id.,* at Ex. 9 (Plaintiff's midyear performance review). Plaintiff was also evaluated on his professional skills, including integrity/ethics, teamwork and communication with team members. *Id.*

performed at the Sebring store. *Id.*, at 182–85.

As store manager, Plaintiff reported to the district manager for that area, Alan Blackard ("Blackard"). Blackard managed Plaintiff until August of 2002, when he was terminated for reasons unrelated to this action. (Blackard Depo., p. 4, 58–59.) Plaintiff then reported to C.R. Gaines. (Gaines Depo., p. 7–8.) Plaintiff's regional manager was Charlie Chacon ("Chacon") (Chacon Depo., p. 6.) Neither Blackard nor Gaines worked out of a specific store, but instead spent most of their time traveling to the stores in their district. District managers visited the Sebring store approximately every seven to ten days for a "walk-thru." (Pl.Depo., p. 56, 134.) They would assess the condition of the store to determine whether it met company standards and provide feedback in that regard to Plaintiff either in person, via telephone or via email. *Id.*, at 134. Plaintiff was "responsible for taking care of that store one hundred percent," however. (Chacon Depo., p. 22.)

Plaintiff resigned on February 18, 2003, after it was discovered that he falsified employment-related test scores of a job applicant. (Pl. Depo., p. 22, Exs. 1 and 12.) Plaintiff now seeks to recover unpaid overtime pursuant to the FLSA on the grounds that he spent 95 percent of his time performing non-managerial functions.

## II. *LEGAL STANDARD*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant must inform the Court of the grounds for the motion, after which the burden shifts to the non-movant to demonstrate why summary judgment is not warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party has an affirmative burden to proffer evidence for each of his claims such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-movant "may not rest upon the mere allegations or denials" of its pleading. Fed.R.Civ.P. 56(e).

## I. *BACKGROUND*

In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the non-movant fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," the Court must enter summary judgment for the moving party. *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir.1998).

## III. *DISCUSSION*

### A. Legal Standard for FLSA Executive Exemption

■ The FLSA provides that

[n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such em-

ployee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a). The FLSA exempts from this requirement employees employed in a bona fide "executive" or "administrative" capacity. 29 U.S.C. § 213(a)(1); *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 965 (11th Cir.1997). Exemptions to the FLSA are construed narrowly, and the employer bears the burden of demonstrating that an employee is exempt. *Id. See also Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) (employer must prove application of FLSA exemption).

To determine whether an employee is a bona fide executive, an employer must establish the exemption under one of two tests. If the employee earns at least $250.00 per week, the employer must satisfy a two-prong test. Pursuant to this test,

> an employee who is compensated on a salary basis of not less than $250 per week...and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

In other words, Plaintiff is exempt from the FLSA if (1) his "primary duty" is management, and (2) he "regularly directs the work of two or more other employees."

The short test controls because it is undisputed that Plaintiff earned a yearly salary of $35,500.00, or $682.69 per week. Additionally, there is no dispute that Plaintiff "regularly and customarily directed the work of at least two employees." (Pl. Depo., p. 62, 64–65.) Thus, the central question regarding application of the executive exemption is whether Plaintiff's "primary duty" was "management."

The regulations further define the terms "primary duty" and "management." "Management" involves

> [i]nterviewing, selecting, and training of employees, setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102. 29 C.F.R. § 541.103 sets forth the standard for determining whether "management" is an employee's "primary duty":

> [A] determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary

case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors include the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercised discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty.[5]

Defendant argues that it is entitled to summary judgment because Plaintiff's duties as store manager rendered him ex-empt from FLSA protections. Plaintiff asserts that Defendant has failed to meet its burden of proving that his primary duty was management for three reasons. First, Plaintiff claims that, although he was the store manager, he spent 95 percent of his time on non-exempt duties and shared managerial duties with several associates. Second, Plaintiff claims that he lacked power to exercise his discretion regarding store management decisions and always worked under the close supervision of his district manager. Finally, Plaintiff argues that, when his $35,500.00 yearly salary is reduced to an hourly rate, he often made less than $9.00 per hour, a rate equal to or less than the wages paid non-exempt employees.

## B. 50 Percent Test

Plaintiff argues that management was not his primary duty because he spent 95 percent of his time performing non-exempt tasks. These tasks included waiting on and selling products to customers; loading customer vehicles with purchases; affixing price tags; receiving and unloading new products from the delivery truck; restocking merchandise on the sales floor; moving trailers, hitch equipment and cattle feeders; moving freight to the sales floor; moving items around the store; rearranging items on the side and front lots; cleaning the floor, shelves, bathrooms and yards; resetting feed, assembling log splitters, riders, go-carts and drill presses; rotating batteries and holding car wash and pressure washer demonstrations to generate sales.

Defendant does not dispute that Plaintiff spent 95 percent of his time perform-

---

5.  Effective August 23, 2004, the primary duty regulation was slightly modified and is now found at 29, C.F.R. § 541.700. Its application is prospective only.

ing non-exempt tasks. Rather, Defendant stresses that time spent performing non-exempt tasks does not necessarily determine whether an employee is exempt. While the regulations provide that an employee who spends more than 50 percent of his time performing managerial duties has management as his primary duty, this measure is only "a good rule of thumb," and an employee who spends less than half of his time on managerial duties may still be classified as a "manager." 29 C.F.R. § 541.103. For instance, in *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982) ("*Burger King I*") and *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir.1982) ("*Burger King II*"), the First and Second Circuits ruled that assistant managers of Burger King restaurants satisfied the short test even though they spent more than 50 percent of their time performing non-exempt tasks such as preparing and serving food. *Burger King I*, 672 F.2d at 226; *Burger King II*, 675 F.2d at 520. The assistant managers supervised other employees, scheduled employees, assigned work, oversaw production quality, spoke with customers, trained employees, determined the quantity of food to be produced at any given time, and performed various recordkeeping, inventory and cash reconciliation duties. *Burger King I*, 672 F.2d at 223; *Burger King II*, 675 F.2d at 521. Thus, even though the assistant managers spent the majority of their time performing non-exempt work, management was still their primary duty because it was a significant part of their job. *Burger King I*, 672 F.2d at 226–27; *Burger King II*, 675 F.2d at 520–21. "[O]ne can still be 'managing' if one is in charge, even while physically doing something else[.]" *Burger King I*, 672 F.2d at 226. *See also Debrecht, Bell & Jackson v. Osceola County*, 243

F.Supp.2d 1364, 1370 n. 11, 1370–72 (M.D.Fla.2003) (battalion chiefs of emergency services department who supervised day-to-day operations of personnel, prepared performance evaluations and made strategic decisions regarding allocation of personnel during emergency operations satisfied short test despite claim that they spent 85 percent of their time performing non-exempt tasks); *Haines v. Southern Retailers, Inc.*, 939 F.Supp. 441, 450 (E.D.Va.1996) (store manager exempt despite spending majority of her time on non-exempt tasks because managerial tasks were so important that she "received praise or blame over whatever happened at the store, good or bad."); *Thomas v. Jones Restaurants, Inc.*, 64 F.Supp.2d 1205, 1212 (N.D.Ala.1999) (fast food restaurant manager exempt although she often performed non-exempt work when crew was behind, where evidence showed management was her primary duty); *Jones v. Virginia Oil Co., Inc.*, 69 Fed.Appx. 633, 635 (4th Cir.2003) (manager of combination fast food and convenience store exempt despite claim of spending 75—80 percent of her time performing non-exempt work where shown that management was her primary duty); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113, 1115–16 (9th Cir.2001) (managers of recreational vehicle park responsible for "making the relatively important day-to-day decisions of the facility and providing for the safety of those in the property" had management as their most important duty despite claim of spending 90 percent of their time performing non-exempt tasks); *Murray v. Stuckey's*, 939 F.2d 614, 618–20 (8th Cir.1991) (manager of combination gas station and convenience store met the primary duty test despite performing non-exempt tasks 65—90 percent of the time); *Kastor v. Sam's Wholesale Club*, 131

F.Supp.2d 862, 866–67 (N.D.Tex.2001) (manager of bakery department who claimed to spend 90 percent of his time performing non-managerial tasks not entitled to overtime pay because "purpose" of his employment was management); *Meyer v. Worsley Cos., Inc.*, 881 F.Supp. 1014, 1019 (E.D.N.C.1994) (manager of Scotchman store who claimed he spent less than 50 percent of his time on management duties exempt from FLSA because employer considered him to be "responsible" for the store and "in charge" of its daily operations). Since Plaintiff spent less than 50 percent of his time performing managerial duties, it is necessary to examine the "other pertinent factors" listed in 29 C.F.R. § 541.103 to determine whether Defendant has carried its burden of demonstrating that Plaintiff is an exempt employee.

## C. Relative Importance of Managerial Duties

■ Plaintiff's own deposition testimony demonstrates the importance of his role as store manager. Plaintiff does not dispute that he was ultimately accountable for the store's success or failure. (Pl. Depo., p. 47–48.) Plaintiff alone was responsible for increasing margins and profits and for devising ways to increase foot traffic and, in turn, sales. *Id.*, at 47, 131–33, 150, 155, 159, 162. The better the store performed, the higher Plaintiff's year-end bonus. *Id.*, at 213; *Id.*, at Ex. 9. The condition of the store prior to Plaintiff's coming on as manager underscores the importance of the managerial role. Plaintiff testified that, when he began work as manager, "[n]othing had been put on the floor." The store "was dirty," and the "side lot was stacked to the top of the chain-link—I guess eight-foot chain-link fence stacked with stuff." Even the "lawn mowers hadn't been put

together." "Nothing had occurred in the store as far as cleaning, freight, resets, nothing." *Id.*, at 52. Plaintiff admitted that his priority as manager was to get the store cleaned up and back into shape and that "Blackard wanted [him] to turnaround the Sebring store..." *Id.*, at 52; Pl. Aff. ¶ 13. Defendant placed such a high value on having managers in all of its stores that it had Plaintiff manage the Okeechobee store temporarily. Plaintiff believed that he had a positive impact on the Okeechobee store, testifying that his working there "made a difference." (Pl.Depo., p. 185.)

Defendant's publications also confirm that a manager's role is to lead the store. Defendant's "Winning in 2002" brochure describes the function of store manager in no uncertain terms: "Build the Team[.] Your #1 Job—LEADERSHIP![,] Hire the best[,] Train the best." (Pl.Aff.Ex. 4.) Although an Internet advertisement for the company stresses its customer service focus, Chacon testified that "[t]here is a large range when it comes to operating and serving our customers and team." (Chacon Depo., p. 34.) According to Chacon, customer service encompasses a variety of duties, including managing the store and team, hiring and training the team, managing the operations and ensuring that the store is presentable and in good condition. *Id.*, at 33–34.

■ Plaintiff attempts to create a factual question regarding the nature of his responsibilities by introducing an affidavit in which he fashions himself as a "working foreman," claiming that his most important duties were akin to those of his team members: serving customers and selling product. A party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary

judgment. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) (court may disregard affidavit submitted for sole purpose of defeating summary judgment motion when deposition testimony directly contradicts affidavit) (quoting *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.1984) ("when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony")). Plaintiff may not create a factual dispute by attempting to recharacterize the nature of his position. Plaintiff's affidavit is stricken from the record insofar as it is inconsistent with Plaintiff's deposition testimony

The Court has nevertheless reviewed the affidavit and has concluded that it fails to create a factual question regarding the relative importance of Plaintiff's managerial duties. The affidavit describes an inverted management structure in which sales associates performed management tasks and Plaintiff performed non-exempt tasks. For instance, associates had the authority to review sales reports, close the store, make the schedule and review employee time records. Pl. Aff. ¶ 6, 24—26. Plaintiff claims he had difficulty delegating tasks to his team members because they were not able to perform their jobs. Plaintiff describes one of his team members as an elderly individual unable to lift heavy objects. *Id.* ¶ 31. Plaintiff also explains that many of his part-time team members did not work during peak business hours. *Id.* Plaintiff claims that he needed to hire more team members, but that his payroll constraints kept him from doing so. As a result, he performed many non-exempt functions himself. *Id.* ¶ 3.

Plaintiff cites *Sack v. Miami Helicopter Service, Inc.*, 986 F.Supp. 1456 (S.D.Fla. 1997) for the proposition that the Court should ignore his title and responsibilities as store manager and focus on the actual work he performed. *Sack* held that Plaintiff, a maintenance director who spent less than 50 percent of his time performing managerial tasks, was non-exempt. 986 F.Supp. at 1468. The director's primary purpose was performing non-managerial inspection work, and he lacked discretion with regard to hiring and firing. *Id. Sack* did not involve a managerial employee creating a lawsuit by delegating his exempt tasks and then claiming to be a non-exempt employee. Courts discount managerial titles in favor of actual work performed where employers give non-exempt employees titles as managers or supervisors in attempts to evade the FLSA. *See Meyer*, 881 F.Supp. at 1019 (citing *Cohn v. Decca Distributing Corp.*, 50 F.Supp. 270, 273 (E.D.Pa.1943) ("[T]he plaintiff was given the empty title of 'assistant manager' to circumvent the provisions of the Fair Labor Standards Act.")). *Sack* is distinguishable from the instant case because Plaintiff's primary purpose was to perform non-managerial inspection work. Such is not the case here, where the record demonstrates that management was Plaintiff's primary duty.

Although Plaintiff delegated managerial functions to store associates, such delegation does not render the duties any less "managerial." *See Baldwin*, 266 F.3d at 1115; *Murray*, 939 F.2d at 619 (irrelevant whether manager delegated managerial duties or whether subordinates were capable of performing such duties). Nor did Plaintiff's choice to delegate managerial duties minimize the importance of the duties or render them non-exempt. *See*

*Baldwin,* 266 F.3d at 1115 (Plaintiffs' performance "of some of the same tasks as their subordinates is not in and of itself evidence that [they] do not qualify for the exemption.").

Blackard's testimony confirms the importance of Plaintiff's management duties. Blackard testified that it would only have been acceptable for Plaintiff to fill in for an employee who called in sick if it "didn't hinder his job as the store manager or it didn't hinder the store's function." (Blackard Depo., p. 16.) Blackard often reminded Plaintiff to delegate non-managerial tasks to sales associates. When Plaintiff informed Blackard that he planned to move some equipment, Blackard informed him that he should instruct team members to perform the task and, if necessary, hire additional help. Pl. Aff. ¶ 18. Blackard also explained that "delegating tasks and following up on those assigned tasks will make [Plaintiff's] team more efficient and effective." *Id.* ¶ 22.

**D. Frequency of Exercise of Discretion and Relative Freedom from Supervision**

Plaintiff claims that he was too closely supervised and too often unable to exercise managerial discretion to be classified as an exempt employee. As to managerial discretion, Plaintiff claims that on one occasion when he attempted to fire an employee, Human Resources chastised him for not checking with them first. Plaintiff also argues that he lacked the freedom to hire employees of his own choosing, claiming that Gaines always wanted to be present during job interviews, either in person or over the telephone. Plaintiff claims that Gaines, not he, set new hires' hourly wages.

Plaintiff's claims are not an accurate reflection of the record. Blackard testified

that Plaintiff had the authority to hire, fire and set wages. (Blackard Depo., p. 33, 38–44.) The Court need not resolve this dispute to enter summary judgment because even "suggestions and recommendations as to the hiring or firing, if given particular weight," constitute management duties. 29 C.F.R. § 541.1. See also 29 C.F.R. § 541.106 ("no employee...can be considered as employed in a bona fide executive capacity unless he is directly concerned with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those who [sic] the hiring and firing functions are delegated."). Plaintiff admits that he had the discretion to send a team member to another store for additional training, even though Blackard thought the training would require less time than Plaintiff had budgeted. On at least two occasions, Plaintiff disciplined team members for failure to follow company policy. Plaintiff claims that he lacked discretion to control the store's inventory, as all inventory ordering was computerized. A manager's reliance on computers to perform a task does not remove the task from the manager's purview, however. *See Haines,* 939 F.Supp. at 447 n. 6 ("[Plaintiff's] assertion... that she did not actually have to account for gasoline usage because that function was conducted by a computer is irrelevant and does not raise a material issue of fact. The fact that she was aided in her responsibilities by modern technology does not in any way alter the fact that gasoline orders were her sole responsibility."). Furthermore, Plaintiff's delegation of non-exempt tasks is an example of managerial discretion.

The record also dispels Plaintiff's argument that he was subject to exacting supervision. Plaintiff's district managers

visited the store approximately once a week for a "walk thru," and any other communication Plaintiff had with his district managers was via telephone or email. (Pl.Depo., p. 56, 134, 136.) Plaintiff's regional manager only visited the store a couple of times during Plaintiff's tenure as store manager. *Id.*, at 60.

Plaintiff's level of independence was greater than described in other cases where courts concluded that managers were sufficiently independent so as to be exempt. In *Haines,* the manager argued that she was closely supervised by senior managers and could not hire, fire or discipline employees without her manager's approval, that she performed many of her duties subject to strict guidelines and that the was subject to rigid supervision and regular visits by higher level management. 939 F.Supp. at 450. Nevertheless, she also prepared the weekly schedule, completed evaluation forms for employees, was partly responsible for hiring, ordered supplies and was ultimately responsible for everything that happened in the store. *Id.*, at 447–48. The Court ruled that "[n]otwithstanding the existence of close supervision by upper management, manager positions similar to that held by [Plaintiff] are vested with enough discretionary power and freedom from supervision to qualify for the executive exemption." *Id.*, at 450. *See also Baldwin,* 266 F.3d at 1115 (park managers had to adhere to company policies, record completed tasks on checklists and were subject to monthly inspections but were nevertheless substantially free from supervision); *Murray,* 939 F.2d at 619 (although regional managers actively supervised store by traveling to each store from time to time and communicating with managers weekly by phone, "the local store manager's job [was not] any less managerial for FLSA purposes simply because he or she has an active regional manager boss."): *Thomas,* 64 F.Supp.2d at 1206 n. 4 (exempt Plaintiff's manager "was a very hands-on supervisor, calling Thomas at work ten to 15 times a day and stopping by the restaurant three to seven days a week."). Plaintiff, though he was to follow company policy as dictated by written and oral instructions, was not micromanaged to the extent that he became a non-exempt employee.

### E. Relationship Between Salary and Wages

The final factor in determining whether Plaintiff's "primary duty" was management is the relationship between his salary and the wages paid to non-exempt employees. While courts have not prescribed a formula for determining where an exempt employee's salary is sufficiently higher than a non-exempt employee's wage to support invocation of the exemption, courts have found a sufficient ratio where the manager made at least $250 more per month than the assistant manager and was the only worker eligible for a bonus, where the department manager's salary was 42 percent higher than the weekly salary of the highest paid associate and the manager alone received a bonus and where the manager made twice as much as the hourly employees. *See Baldwin,* 266 F.3d at 1115–16, *Kastor,* 131 F.Supp.2d at 868–69, *Haines,* 939 F.Supp. at 445. Here, Plaintiff's annual salary was $35,500, or $682.69 per week. Plaintiff was also eligible for a yearly bonus based on the store's sales. In contrast, the associates were paid an hourly rate of $9.00 per hour, or $360.00 per week, and were not entitled to the year-end bonus. Plaintiff, relying on the Fourth Circuit's decision in *Jones v. Virginia Oil Co.,* has proposed a novel means of comparing his salary to an associate's

wages, claiming that if his pay were divided by the number of hours he worked and reduced to an hourly rate, his hourly rate was not much higher that, or, in some cases, even lower than, that of the team members. The Fourth Circuit performed no such mathematical gymnastics in deciding *Jones,* however. *Jones* simply compared the manager's weekly salary with the highest possible non-exempt weekly wage, concluding that the pay differential was sufficient to render the manager exempt. 69 Fed.Appx. at 639.

Application of each factor indicates that Plaintiff's primary duty was management within the meaning of the regulations Plaintiff is exempt from FLSA overtime provisions by virtue of the executive exemption, and Defendant is entitled to summary judgment on this basis. The potential application of the administrative exemption is thus moot, and the Court declines to address it.

## IV. *CONCLUSION*

THE COURT, having considered the pertinent portions of the record and having heard oral argument from the parties, hereby

ORDERS AND ADJUDGES that Defendant Tractor Supply Company's Motion for Summary Judgment, filed October 8, 2004 is GRANTED. Final judgment shall be entered by separate order.